797 So.2d 485 (2000)
J.P.C.
v.
O.C.B. and R.B.
2990363.
Court of Civil Appeals of Alabama.
September 22, 2000.
Rehearing Denied December 15, 2000.
Certiorari Denied April 20, 2001.
*486 H. Powell Lipscomb III, Bill Thomason, and Becky Thomason of Lipscomb & Thomason, L.L.C., Bessemer; and Rhonda Pitts Chambers of Rives & Peterson, P.C., Birmingham, for appellant.
Candice J. Shockley of Holliman, Shockley & Kelly, Pelham, for appellee O.C.B.
Julia C. Kimbrough of Allison, May, Alvis, Fuhrmeister & Kimbrough, Birmingham, for appellee R.B.
Michael Lipscomb of Lipscomb & Lipscomb, Bessemer, guardian ad litem.
Alabama Supreme Court 1000575.
ROBERTSON, Presiding Judge.
J.P.C. ("the putative father") appeals from a judgment of the Circuit Court of Jefferson County, Bessemer Division, declaring him to be the legal father of J.S.B., a child born during the marriage of O.C.B. ("the mother") and R.B. ("the former husband"). Because the mother did not timely initiate a paternity action against the putative father, we reverse and remand with instructions.
The mother and the former husband were married in 1978. In 1985, the mother began having an affair with the putative father. In December 1986, while the mother and the putative father were engaging in regular sexual relations, the mother approached the former husband, who had not yet discovered the affair, and sought his consent for her to attempt to become pregnant through artificial insemination. The former husband agreed to the procedure. Over the next three months, the mother obtained a number of semen samples from the putative father that were used during the artificial-insemination procedure; however, the sexual liaisons between the mother and the putative father also continued during that period.
The mother became pregnant in March 1987, and gave birth to the child in November 1987. The former husband identified himself as the father of the child on the child's birth certificate, and the joint income-tax returns filed by the mother and the former husband for 1987 identify the child as their dependent. In addition, the former husband obtained health-insurance coverage for the child through his employer, and the child remains subject to that coverage as the former husband's dependent.
In August 1988, the mother filed a complaint in the trial court seeking a divorce. In that complaint, she asserted that "there were no children born to the parties ... as *487 a result of their marriage." The former husband filed an answer and waiver, and the trial court entered, on August 23, 1988, a judgment divorcing them. That judgment did not address issues of custody of the child or any support obligation owed by the former husband.
The former husband, in January 1992, filed a motion seeking modification of the judgment to reflect the birth of the child, to award visitation, and to address child support. The mother counterclaimed, seeking enforcement of certain property awards in the divorce judgment. That proceeding was dismissed in January 1993.
On May 16, 1994, the mother filed a petition in the Jefferson County Family Court seeking a judgment declaring the putative father to be the biological father of the child and directing him, among other things, to pay prospective and retroactive child support. The putative father moved to dismiss the mother's petition, asserting, among other things, that the mother's action was barred by the expiration of the five-year limitations period provided in § 26-17-6(a), Ala.Code 1975. A guardian ad litem was appointed for the child, and the former husband was made a party to the action. The guardian filed a motion to dismiss the mother's petition. Before the mother's petition could be heard on its merits, however, the Family Court transferred the matter to the circuit court.
After the case had been transferred, the circuit court ordered blood testing of the mother, the child, and the former husband, the results of which excluded the former husband as the child's biological father. The putative father again moved to dismiss the proceedings, on the authority of § 26-17-6(a), Ala.Code 1975, and also asserted that defense in his answer (which contained a jury demand). The trial court denied the putative father's motion to dismiss, as well as his subsequent motion requesting that the trial court revisit that denial, and directed the mother, the child, and the putative father to submit to blood testing. The case was later set for trial on the circuit court's jury-trial docket.
During the trial, the putative father moved for a judgment as a matter of law, again asserting, among other things, the five-year statute of limitations; the trial court denied that motion. After receiving ore tenus evidence,[1] the trial court concluded that § 26-17-6(a) did not apply because, it said, the putative father had "held the child ... out as his own and [the former husband] did not insist [upon] the stronger presumption afforded a child born during a marriage." The putative father was declared to be the father of the child, and was directed to pay child support, a portion of the mother's attorney fees, and a portion of the fees of the child's guardian ad litem. The trial court later denied the putative father's postjudgment motion.
The putative father, who was the only party to appeal from the judgment, raises four issues on appeal. However, we find dispositive the question of the timeliness of the mother's action.[2]
The Alabama Uniform Parentage Act ("AUPA"), § 26-17-1 et seq., Ala.Code 1975, contains a number of provisions that *488 are pertinent to the timeliness issue. Under subdivision (1) of § 26-17-5(a), a man is presumed to be the natural father of a child if he and the child's natural mother have been married to each other and the child is born during the marriage. Under that subdivision, the former husband is presumed to be the child's father, and while that presumption is certainly not the equivalent of an adjudication of paternity (State ex rel. T.L.K. v. T.K., 723 So.2d 69, 71 (Ala.Civ.App.1998)), the existence of such a presumption has a profound effect on a party's ability to maintain a paternity action.
As we discussed in Carr v. Osborn, 757 So.2d 1205 (Ala.Civ.App.2000), where a child has no presumed father under the AUPA, no statute of limitations prevents an interested party from obtaining a judicial declaration of paternity. However, where a child has a presumed father under subdivision (1) of § 26-17-5(a), as here, Alabama cases have held that a paternity action respecting that child must be brought within five years of the child's birth. That result is based upon the language of § 26-17-6(a), which provides that "a child, a child's natural mother, or a man presumed to be the child's father under subdivision (1), (2) or (3) of Section 26-17-5(a), may bring an action within five years of the birth of said child for the purpose of declaring the existence of the father and child relationship."
The principal case applying § 26-17-6(a) in a similar legal setting is State ex rel. E.K.D. v. M.R.W., 662 So.2d 910 (Ala.Civ. App.1994), cert. quashed, 662 So.2d 913 (Ala.1995). In M.R.W., the mother of a child became pregnant three months before meeting her future husband, R.K.D., and seven months before marrying him; the child was born during the first two months of the mother's marriage to the husband. In addition, the child's birth certificate listed the mother's husband as the child's father. Approximately five years and six months after the child's birth, the State of Alabama, on the relation of the mother, brought a paternity action against M.R.W. seeking to have him declared the father of the child. The circuit court dismissed the State's action against M.R.W. based upon the five-year limitations period stated in § 26-17-6(a). This court affirmed the dismissal:
"The facts of this case are clearly within the parameters of § 26-17-5(a)(1), Ala.Code 1975. The child was born during the mother's marriage to R.K.D., he is listed on the child's birth certificate as the father, and R.K.D. has been the child's presumed father during the child's lifetime. Section 26-17-6(a) `carries with it a five-year period of limitations, which had already expired before this action was brought.' Ex parte Presse, 554 So.2d 406, 412 (Ala.1989).
"The legislature placed a five-year period of limitations on bringing an action when the child has a presumed father. `If a statute is not ambiguous or unclear, the courts are not authorized to indulge in conjecture as to the intent of the Legislature or to look to consequences of the interpretation of the law as written.' Ex parte Presse, 554 So.2d at 411 (citing Clark v. Houston County Comm'n, 507 So.2d 902 (Ala.1987)). Our supreme court has held that § 26-17-6(a) is clear and unambiguous and that it carries with it a five-year period of limitations within which to bring an action. Ex parte Presse. `The decisions of the supreme court shall govern the holdings and decisions of [this court].' § 12-3-16, Ala.Code 1975. Consequently, we must hold that the mother's petition was untimely filed."
M.R.W., 662 So.2d at 912.
The interpretation of § 26-17-6(a) by this court in M.R.W.that paternity actions *489 seeking to have a man declared the father of a child (as against a presumed father under § 26-17-5(a)(1)) must be brought within five years of the child's birthwas approved by our Supreme Court in Ex parte State. ex rel. State. of Ohio, 718 So.2d 669 (Ala.1998):
"In M.R.W., the alleged father moved to dismiss a paternity action filed against him, based on the five-year statute of limitations in § 26-17-6(a). The Court of Civil Appeals correctly held that the five-year limitations period applies in an action brought to determine the existence of the father-and-child relationship when a child has a presumed father, as set forth in § 26-17-5(a)(1)."
718 So.2d at 670. Although the Supreme Court in State of Ohio distinguished M.R.W. because the defendant in State of Ohio had not pleaded or argued the applicability of § 26-17-6(a), the Supreme Court's approval of M.R.W. has been noted in two subsequent cases. See State ex rel. T.L.K., 723 So.2d at 70-71 (affirming the trial court's judgment against the State in an action to establish paternity and to collect child support that was not brought within five years of child's birth); State ex rel. P.W. v. T.H.P., 726 So.2d 279, 281-82 (Ala.Civ.App.1998) (affirming summary judgment entered against mother and child in favor of putative father in paternity action where that action was not filed until 14 years after child's birth); see also id. at 282-83 (special concurrence by dissenting judge in M.R.W. on the authority of State of Ohio's approval of M.R.W.).
The appellees attempt to distinguish M.R.W., State of Ohio, and their progeny in two ways. First, relying upon the former husband's filing of an amended answer asserting the results of the courtordered blood tests in this case, they claim that § 26-17A-1, Ala.Code 1975,[3] overrides § 26-17-6(a) in this factual setting. As the Supreme Court noted in Ex parte Jenkins, 723 So.2d 649 (Ala.1998), "[u]nder § 26-17A-1(a), a previously adjudicated father can petition for a reopening of the final judgment of paternity ... if he presents scientific evidence indicating that he is in fact not the biological father." 723 So.2d at 652 (emphasis added). The emphasized words of Jenkins are crucial: while § 26-17A-1(a) is applicable to divorce judgments as well as "pure" paternity judgments (see S.W.M. v. D.W.M., 723 So.2d 1271, 1272 (Ala.Civ.App.1998)), a prerequisite to the application of § 26-17A-1(a) is that a final judgment must exist that declares the petitioning party to be the father of a child. Here, the trial court's 1988 divorce judgment did not refer at all to the child, much less adjudicate the former husband to be the child's father, and there is thus no previous adjudication upon which § 26-17A-1(a) can operate.
Second, citing § 26-17-6(b), Ala. Code 1975, and caselaw construing that statute, the appellees contend that no statute of limitations applied to the action. Section 26-17-6(b) provides that an action may be brought at any time "for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a)" (emphasis added). Those subdivisions provide for a presumption of paternity that applies to (a) men who receive minor children into their homes or "otherwise openly hold out" such children as their natural children, (b) men *490 who acknowledge paternity of children by a writing filed in accordance with statutes governing legitimation, or (c) men who execute, jointly with the mothers of children, affidavits of paternity.
However, the record in this case does not establish that the putative father performed any of the acts set forth in subdivisions (5) or (6) of § 26-17-5(a). As to these subdivisions, there is no evidence of the putative father's having acknowledged his paternity in a writing acknowledged before a probate judge in the county of his residence (as required by § 26-11-2(a), the "legitimation statute" to which § 26-17-5(a)(5) refers), nor is there evidence that he and the mother have executed any affidavit of paternity. Indeed, the record reveals that the putative father refused in 1994 to sign papers drafted by lawyers employed by the mother that would have acknowledged paternity of the child.
The appellees insist that the following evidence presented at trial supports the trial court's conclusion that the putative father "openly held out" the child as his own under subdivision (4) of § 26-17-5(a): between 1993 and 1994, the putative father regularly visited her, gave greeting cards to her, allowed his picture to be taken with her, told her that she had a brother and a sister,[4] and told her that he loved her. We do not dispute the veracity of mother and the child's testimony that these events did, in fact, occur. However, we do not agree with the proposition that these events amount to "openly holding out" the child as being the child of the putative father. The actions of the putative father relied upon by the appellees do not amount to declarations of paternity to any person other than the mother and the child themselves; those actions lack the requisite degree, inherent in the terms "openly" and "holding out," of a public acknowledgment of the child as being the putative father's own. They certainly fall short of the clear statements made by the putative father-decedent in Hampton v. Hampton, 597 So.2d 233 (Ala.Civ.App. 1992), to family members and members of the community that the claimants were his children. Cf. Harrison v. Racca, 360 So.2d 974, 974-75 (Ala.1978) (evidence that no public documents existed showing a putative husband to be married defeated elements of public recognition of the marriage or open assumption of marital duties and obligations, and supported judgment that no common-law marriage existed). Thus, we conclude that § 26-17-5(a)(4) does not apply here.[5]
The final argument offered by the appellees in support of their contention that the mother's action was timely is that the scientific and other evidence introduced during the trial to demonstrate that the putative father was the child's biological father rendered the child "a child who has no presumed father under Section 26-17-5," so that an action could be brought at any time to establish her paternity. See § 26-17-6(c), Ala.Code 1975; see also Carr, 757 So.2d at 1207 (discussing legal principles governing paternity actions brought in the absence of a presumption of paternity). We cannot accept that argument, however. *491 Under § 26-17-5(a)(1), the former husband was, as a matter of law, presumed to be the child's father before the mother's action was filed. The mother may have adduced proof that tended to rebut the presumption that the child was fathered by the former husband (i.e., that the child was legitimate) to the satisfaction of the trial court, but the presumption in favor of legitimacy was not destroyed by that proof. As was noted in M.R.W., § 26-17-5(c) has no application where a presumption of fatherhood exists (662 So.2d at 913), and the absence of any efforts on the part of the mother within the five-year period after the child's birth to bring an action to challenge the presumption of paternity as to the former husband is fatal to the mother's action here. See also State ex rel. P.W., 726 So.2d at 282 (because the 16 year old child had not been a party to a divorce action in which a judgment had incorporated the parties' agreement, which stated that the child was not the child of the parties, the presumption of paternity with respect to the former husband of the child's mother continued to apply to him, rendering § 26-17-6(c) inapplicable).
Based upon the foregoing facts and authorities, we conclude that the mother's paternity action against the putative father was time-barred and that the trial court therefore erred in denying the putative father's motions and in entering a judgment declaring him to be the father of the child in this case. For that reason, we reverse the judgment of the trial court, and we remand the cause for that court to enter a judgment consistent with this opinion. The appellees' request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
The court's holding states Alabama law as it should be, and I would like to concur in the opinion. I must dissent, however, because this court is bound to apply the law as it isnot as it should be.
The former husband was married to the mother at the time the child was born; he is, therefore, presumed to be the child's father. See § 26-17-5(a)(1), Ala.Code 1975. When the mother filed a petition to have J.P.C., a man other than her former husband, declared the father of the child, the mother's action was brought for the purpose of declaring the nonexistence not the existenceof a presumed relationship between the child and the mother's former husband.
The five-year limitations period of § 26-17-6(a), Ala.Code 1975, does not apply to an action to establish the nonexistence of a relationship presumed on account of marriage. In Ex parte Jenkins, 723 So.2d 649 (Ala.1998), our supreme court held that the five-year statute of limitations applicable to an action to establish the existence of the father-child relationship based on the marriage presumption is not applicable to an action to establish the nonexistence of that relationship. In Jenkins, the court stated:
"Section 26-17-6(a) expressly limits to five years after a child's birth an action to declare the `existence' of the father and child relationship presumed under § 26-17-5(a)(1), (2), or (3). Had the Legislature intended the five-year limitations period to apply to an action to establish the `non-existence' of the relationship, it would have included the term `non-existence' in § 26-17-6(a), as it did in § 26-17-6(b). The choice to exclude the word `non-existence' in § 26-17-6(a) indicates that the Legislature *492 did not intend to impose a strict five-year limitations period on actions brought to challenge a presumption of paternity."
723 So.2d at 653 (emphasis in original).
This court's holding that the mother's paternity action was time barred by § 26-17-6(a) directly conflicts with Jenkins and is contrary to Alabama law. I will explain why I think the holding states the law as it should be, however, in the hope either that our Legislature will amend the statute or that the Alabama Supreme Court will reconsider the issue.
Neither the parties nor the court has addressed the issue of the mother's right to bring the action she did: a challenge to her former husband's paternity of the child. The unstated assumption seems to be that her right to bring the challenge derives from the Alabama Uniform Parentage Act ("AUPA"), § 26-17-1 et seq. That assumption is faulty. The AUPA, as enacted by our Legislature in 1984, simply does not allow a mother to file an action to challenge her former husband's paternity relationship, or to declare its nonexistence. Oddly enough, the statute allows an action only to affirm the husband's paternity relationship, or to declare its existence. Section 26-17-6(a) provides:
"A child, a child's natural mother, or a man presumed to be its father under subdivision (1), (2), or (3) of Section 26-17-5(a) may bring an action within five years of the birth of said child for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a)."
(Emphasis added.) Although the mother may have a right derived from a source other than the AUPAsuch as the Declaratory Judgments Actshe has no right under the AUPA to challenge a parental presumption in favor of her former husband for the purpose of showing that the presumed father is not the biological father. That gap in the AUPA seems strange, especially in light of the stated purpose of the AUPA to extend the parent and child relationship "equally to every child and to every parent, regardless of the marital status of the parents." See § 26-17-3, Ala.Code 1975. "[T]he ultimate objective of the UPA is to promote full equality for all children." Ex parte Presse, 554 So.2d 406, 411 (Ala.1989).
A number of jurisdictions, including Alabama, have adopted the 1973 Uniform Paternity Act ("UPA"). See 1973 U.P.A., Table of Adopting Jurisdictions, 9B Uniform Laws Annotated 287 (1987). Under Alabama's version of the UPA, if a child has a presumed father as a consequence of the marriage presumption, then the only action authorized by § 26-17-6 is one to declare the existence of the father and child relationship. The statutory restriction in § 26-17-6, which limits a woman in the mother's position to affirming her husband's/former husband's paternity relationship and does not allow for a challenge to that relationship, is illogical and unfair. It is illogical because it provides a superfluous cause of action to declare the existence of a relationship that is already presumed in law. It is unfair because it provides no cause of action to dispute that is, to declare the nonexistence ofa father and child relationship between a man and a child born during that man's marriage to the child's mother.
The majority of this court reverses the judgment based on the mother's untimely filing of her complaint, but it should be noted that, under Alabama's version of the UPA, even if the mother had sued the day after the child was born, the lawsuit still would have been unauthorized by the AUPA because the mother's action was brought for the purpose of declaring the *493 nonexistencenot for the purpose of declaring the existenceof a presumed relationship between the child and the mother's former husband.
I suggest that the anomalies inherent in § 26-17-6 are due to the fact that when our Legislature adopted § 26-17-6(a), it used the word "existence" instead of the word "nonexistence" that is found in the corresponding section of the UPA, drafted and approved by the National Conference of Commissioners on Uniform State Laws. Sections 26-17-1 et seq., Ala.Code 1975, for the most part, mirror the corresponding sections of the UPA. See 1973 U.P.A., General Statutory Notes, 9B Uniform Laws Annotated 290 (1987) (noting that "the Alabama act is a substantial adoption of the major provisions of the Uniform Act," but also noting that the Alabama act "departs from the official text" in some instances).
A significant departure from the official text is found by comparing § 26-17-6(a) of the Alabama act (using the word "existence") with § 6, subsection (a)(2) of the Uniform Act (using the word "nonexistence"). For comparison purposes, I will set out both sections in their entirety:
The Uniform Parentage Act
" § 6. [Determination of Father and Child Relationship; Who May Bring Action; When Action May Be Brought]
"(a) A child, his natural mother, or a man presumed to be his father under Paragraph (1), (2), or (3) of Section 4(a), may bring an action
"(1) at any time for the purpose of declaring the existence of the father and child relationship presumed under Paragraph (1), (2), or (3) of Section 4(a); or
"(2) for the purpose of declaring the non-existence of the father and child relationship presumed under Paragraph (1), (2), or (3) of Section 4(a) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than [five] years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.
"(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under Paragraph (4) or (5) of Section 4(a).
"(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 4 may be brought by the child, the mother or personal representative of the child, the [appropriate state agency], the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.
"(d) Regardless of its terms, an agreement, other than an agreement approved by the court in accordance with Section 13(b), between an alleged or presumed father and the mother of the child, does not bar an action under this section.
"(e) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except service of process and the taking of depositions to perpetuate testimony."
. . . . . . . . . .
The Alabama Uniform Parentage Act
" § 26-17-6. Action to determine father and child relationship; who may *494 bring action; when action may be brought; stay until birth; adopted children.
"(a) A child, a child's natural mother, or a man presumed to be the child's father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action within five years of the birth of said child for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a); or
"(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).
"(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 26-17-5 may be brought by the child, the mother, or personal representative of the child, the public authority chargeable by law with support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.
"(d) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except service of process and the taking of depositions to perpetuate testimony.
"(e) If the child has been adopted, an action may not be brought."
Section 6 of the UPA allows a challenge to a father-and-child relationship presumed because of the father's marriage to the child's mother; § 26-17-6(a), Ala.Code 1975, does not. The Commentary to § 6 of the UPA explains the reason for allowing such a challenge but for restricting the time within which the challenge can be brought:
"This section consists of two major parts. Subsections (a) and (b) deal with the action to declare or dispute the existence of the father and child relationship presumed [as a consequence of the child's birth during the marriage of its mother and her husband]. Attack on the presumptions based on marriage or on a relationship that resembles marriage is restricted to a limited circle of potential contestants and in point of time. Presumptions created in other circumstances may be attacked more freely."
(Emphasis added.)
I think § 6 of the UPA states a more desirable goal than § 26-17-6, the corresponding section of the AUPA. It makes sense, as a matter of sound public policy, for a woman to have a mechanism by which she can challenge the presumption that a man to whom she was married is the biological father of her child. It makes even more sense to have a short limitations period for mounting such a challenge. "[T]he presumption that the husband of the mother of a child born during the marriage is the father of that child is ... one of the strongest presumptions known to the law." Ex parte Presse, 554 So.2d at 413.
"The primary policy rationale underlying the common law's severe restrictions on rebuttal of the [marriage] presumption appears to have been an aversion to declaring children illegitimate, thereby depriving them of rights of inheritance and succession, and likely making them wards of the state. A secondary policy concern was the interest in promoting the `peace and tranquillity of States and families,' a goal that is obviously impaired by facilitating suits against husband *495 and wife asserting that their children are illegitimate."
Ex parte Presse, 554 So.2d at 416 (internal citations omitted). Because of the strength of the marriage presumption, one who wishes to challenge the presumed paternity of a child born during a marriage should have a very limited time in which to make the challenge. I cannot imagine that the average Alabamian would countenance an unlimited period of time within which the offspring of a marriage might be dislocated from the only father he has ever known and introduced to a new one.
The outcome of the case before us hinges on whether we acknowledge that, in § 26-17-6, Alabama has departed from the official text of the UPA, as drafted by the National Conference of Commissioners on Uniform State Laws. "A review of the [Uniform] Act will indicate that it is one interlocking and interdependent piece of legislation that does not lend itself to being enacted in part." See 1973 U.P.A., Prefatory Note, 9B Uniform Laws Annotated 289 (1987). Alabama's departure from the UPA represents an illogical and unfair restriction on the right to challenge a presumed paternity relationship. I urge our Legislature to amend § 26-17-6(a) to be consistent with the UPA on which it was modeled, by altering it to read as follows:
"A child, a child's natural mother, or a man presumed to be its father under subdivision (1), (2), or (3) of Section 26-17-5(a) may bring an action within five years of the birth of said child for the purpose of declaring the non-existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a)."
NOTES
[1] The trial court's judgment indicates that it treated the jury's verdict as advisory only. See Rule 39(c), Ala.R.Civ.P.
[2] Because the circuit court, which had entered a judgment divorcing the mother and the former husband, retained jurisdiction over those parties and the marital res, and because the child was born during the parties' marriage, that court was a proper forum to hear the issue of the child's paternity. See Floyd v. Floyd, 701 So.2d 1151 (Ala.Civ.App.1997).
[3] That Code section provides, in pertinent part: "Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father."
[4] The record reveals that the putative father and his former wife have two children.
[5] Even were the evidence sufficient to demonstrate an open holding out of the child as the putative father's own child, the presumption under subdivision (1) that the child is that of the former husband would prevail over a countervailing presumption; public policy considerations upon which a husband is presumed to be the father of his wife's child are weightier than the other presumptions under § 26-17-5. Ex parte C.A.P., 683 So.2d 1010, 1011 (Ala.1996).